UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LLOYD ERIC ANDERSON,         ) | |
| )    | |
| Plaintiff,            ) | |
| )    | |
| v.                                                   ) | Case No. 4:23-cv-00453 SRC |
| )    | |
| CORIZON HEALTH SERVICES, et al.,   ) | |
| )    | |
| Defendants.            ) | |

### Memorandum and Order

Self-represented Plaintiff Lloyd Anderson filed suit under 42 U.S.C. § 1983 for alleged violations of his civil rights.  Now, Anderson moves to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs.  Doc. 2.  Having reviewed the motion and the financial information submitted in support, the Court grants the motion and assesses an initial partial filing fee of $38.43.  *See* 28 U.S.C. § 1915(b)(1).  As Anderson now proceeds *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915.  Based on that review, the Court dismisses this case for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).  The Court denies as moot Anderson's motion for appointment of counsel.

**I.       Initial Partial Filing Fee**

Federal law requires a prisoner bringing a civil action *in forma pauperis* to pay the full amount of the filing fee.  28 U.S.C. § 1915(b)(1).  If the prisoner lacks sufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of twenty percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner must make monthly

payments of twenty percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Anderson is a convicted and sentenced state prisoner at Southeast Correctional Center ("SECC").  Doc. 7.  In support of his motion to proceed without prepaying fees and costs, Anderson submitted an inmate account statement showing average monthly deposits of $192.14.  Doc. 3.  The Court finds that Anderson lacks sufficient funds in his prison account to pay the entire fee and therefore, assesses an initial partial filing fee of $38.43—twenty percent of Anderson's average monthly deposit.

## II.     Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true.  *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984).  And it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that "if the essence of an allegation is discernible . . . the district court should construe the [plaintiff's] complaint in a way that permits the . . . claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (first alteration in original) (citation omitted).  However, even self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912,

914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### III. The Complaint

Although Anderson is currently confined at SECC, *see* Doc. 7, he brings this action under 42 U.S.C. § 1983 against medical and dental-care defendants at his previous place of incarceration, Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), Doc. 1 at pp. 1–3. Named defendants include (1) Corizon Health Services; (2) Dr. Unknown Bellon (Corizon dentist); and (3) "all medical staff assigned to 7 house seg. et al." Doc. 1 at pp. 1–3. According to Anderson, he received deliberately indifferent medical and dental care from these defendants in June and July 2020 for the treatment of a broken jaw.

Anderson alleges the following. On June 18, 2020, Anderson was assaulted at ERDCC, resulting in a broken jaw. *Id.* at p. 3. After the assault, he asked "many times" for medical attention, but "[d]eliberate indifference was shown," resulting in the re-breaking of his jaw and a plate attachment. *Id.* at pp. 3–4. Anderson then experienced "weeks of pain and suffering due to lack of care and treatment." *Id.* at p. 4. Further, the lack of care came from Defendants "having

3

no training on how to effectively care for a prison population during a crisis or pandemic." *Id.* Anderson lists four injuries: twice-broken jaw, surgical plate, loss of several teeth, and "daily bouts with nerve damage" two-and-a-half years later. *Id.* For relief, Anderson seeks monetary damages. *Id.* at p. 5.

Anderson states that he has exhausted his administrative remedies on his claims relating to deliberate indifference, gross negligence, and "poor to no training for caring for prison population during COVID19 pandemic." Doc. 1 at p. 6. He attached many of his grievance filings as exhibits to his complaint.[1] Doc. 1-2. In August 2020, Anderson filed an Informal Resolution Request ("IRR") at ERDCC, complaining about "19 days of severe pain" after a June 18th assault that resulted in his placement in "Adseg." *Id.* at p. 1. An ERDCC nurse responded to the IRR by detailing Plaintiff's treatment:

> On 6-18-20 you were seen by the nurse for a segregation initial evaluation. He documented that you refused to have vital signs taken. He documented no signs of trauma. He documented that you had no medical complaints.
> On 6-23-20 you declared a medical emergency and stated that your jaw was broken. The dentist took a panoramic x-ray and determined that your jaw was broken. He placed a referral for an oral surgery consultation. He ordered ibuprofen 200mg tabs.
> The referral to the oral surgeon was approved.
> On 6-29-20 you were seen by your facility dentist. He noted that you were awaiting the appointment with the oral surgeon.
> On 7-06-20 you went to the oral surgeon. The oral surgeon recommended a liquid diet, hydrocodone/APAP, amoxicillin, extraction of tooth #17, and oral surgery on your left mandible.
> When you returned to the facility the oral surgeon's recommendations were approved, in addition to ibuprofen 800mg tabs.

*Id.* at p. 2. Anderson underwent oral surgery on July 14, 2020. *Id.*

---

[1] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

4

In his Offender Grievance filing following the denial of this IRR, Anderson complained that the response did not mention the "19 days [he] spent in extreme pain." *Id.* at p. 5.  Also, he protested that the dentist's order to receive ibuprofen 200mg "does not say how many and doesn't have a start or stop." *Id.*  As such, Anderson alleges that he did not get relief from his pain until the order for "800mg tabs, plus hydrocodone/APAP, amoxicillin, and a liquid diet"—which he asserts occurred "19 days after [his] jaw was broken."  Anderson also states that he sought medical attention through three Health Service Requests ("HSR") between the "18th & 23rd of June." *Id.*  He argues that "the amount of pain & suffering occurred due to the lack of prompt medical attention." *Id.*  This grievance was denied as duplicative. *Id.* at p. 6.

Finally, in Anderson's Offender Grievance Appeal, he admits that the prior IRR response did "cover the treatment giv[en] to [him] for said broken jaw," but he alleges that there was still deliberate indifference shown to him in the process of receiving that treatment. *Id.* at p. 3.  In the institutional response to this appeal, Anderson's medical records were again reviewed and summarized:

> Upon review of your medical record, grievance records and investigation of your concern, I found that you were seen by nursing staff for initial segregation evaluation on June 18, 2020.  Documentation reports that you were oriented x3, refused vital signs and denied complaints.  I don't see documentation of self declare [sic] but find HSR received in medical on June 20 for severe tooth pain.  This HSR was triaged on [] June 23, seen by nursing that same day and urgently referred for dental evaluation.  I note from your record that you had a current order for prn Acetaminophen at that time.  You were seen by dental on June 23, 2020 with x-ray which revealed fractured left mandible.  At this time, your prn Tylenol order was discontinued and you were given Ibuprofen 400mg every 6 hours as needed for pain.  You were referred to oral surgeon and were seen by surgeon on July 6.  You were ordered a liquid diet, your Ibuprofen was increased to 800mg every 8 hours, and started on Hydrocodone/APAP as well as antibiotic on July 6.  Your surgery was completed on July 14th and you returned to infirmary that same day.

*Id.* at p. 4.

## IV. Discussion

Based on a careful examination and liberal construction of the filings before the Court, Anderson fails to adequately allege claims to withstand review under 28 U.S.C. § 1915(e)(2). Anderson's factual assertions are not enough to state a claim of deliberately indifferent medical or dental care, and he does not sue a personally liable defendant. Although Anderson names Dr. Bellon as a defendant in his complaint, he never makes any allegations of constitutional harm against him. His allegations against medical contractor Corizon fail to state a claim for relief because he does not argue that a Corizon policy, custom, or other official action violated his rights. Further, Anderson's vague attempt to assert a claim against "all medical staff assigned to 7 House" is not sufficient. Section 1983 requires personal liability and Anderson never names a specific defendant who was personally responsible for, or directly involved in, a denial or delay in his care. Finally, even if Anderson had named a specific defendant,[2] the facts alleged in the pleadings do not rise to the level of intentional maltreatment or criminal recklessness. As such, Anderson fails to state a claim of deliberate indifference, and the Court dismisses this case.

### A.    Legal Standard:  Eighth Amendment Deliberate Indifference

Plaintiff brings this action under 42 U.S.C. § 1983, which Congress designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate

---

[2] The Court notes that Anderson filed this case at the same time as another section 1983 case—as both cases arrived at the Court in the same envelope. *See Anderson v. E. Diagnostic & Reception Corr. Ctr.*, No. 4:23-cv-454-SEP (E.D. Mo. Apr. 10, 2023). In that case, Anderson also alleges deliberately indifferent medical care in regard to his broken jaw injury from June 2020. Anderson names as defendants his prior place of incarceration (ERDCC) and multiple, specific correctional officers. In a letter attached to the complaint, he indicates his clear intention that these two lawsuits be filed separately. Doc. 1-1. Whether Anderson has stated a claim of deliberate indifference against the specific correctional officer defendants named in that matter is an issue for that case. Anderson filed an amended complaint in that case on September 11, 2023. *See Anderson*, No. 4:23-cv-454-SEP, Doc. 9 (filed Sept. 11, 2023).

indifference to serious medical needs.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on a deliberate-indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need and that defendants actually knew of and disregarded that need.  *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citation omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent."  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (citation omitted).  An inmate must demonstrate that a prison-health-care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (citation omitted).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference.  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 104–05.  When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects.  *Id.* at 1119–20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in

7

treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

B. **Defendant Corizon Health Services**

Anderson names Corizon—Missouri Department of Corrections' contracted-health-care provider at the relevant time—as a defendant in this matter. Section 1983 holds a private corporation, like Corizon, liable only for its own unconstitutional policies; a private corporation is not liable under the doctrine of respondeat superior for the actions of its employees. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993). To state a claim against a corporation, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see Sanders*, 984 F.2d at 975–76 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983"); *see also Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004) *(*citing *Monell*, 436 U.S. at 690). In this case, other than naming Corizon as a defendant, Plaintiff makes no allegations against this entity. The pleadings do not contain any assertions that a Corizon policy, custom, or other official action caused a delay or denial of access to adequate medical or dental care.

Liberally construing the allegations of the self-represented complaint, Anderson may be asserting that Corizon is liable under section 1983 for a failure to train by not "training on how to effectively care for a prison population during a crisis or pandemic." Doc. 1 at p. 4. However, to demonstrate deliberate indifference for purposes of failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017). Here, Anderson makes no allegations as to other incidents resulting from a failure of Corizon to train its employees on how to care for prison inmates

8

during a pandemic. No allegations exist that could be construed to constitute a pattern of violations. Further, because Anderson does not name with specificity any defendant who denied him medical care, it is not clear from the pleadings that a Corizon employee—rather than an MDOC employee—allegedly violated Anderson's rights. For these reasons, Anderson's claim against Corizon fails to state a claim for relief.

### C. Defendant Dr. Bellon

Anderson also brings claims against Dr. Bellon, a dentist employed by Corizon, in his individual capacity only. Doc. 1 at p. 2. However, although Anderson names Dr. Bellon in his complaint, Anderson does not make any factual allegations regarding any wrongdoing by Dr. Bellon. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under section 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

Here, Anderson fails to allege how Dr. Bellon is causally linked to, or directly responsible for, violating his rights. As a result, the pleadings fail to state a claim upon which relief may be granted as to Dr. Bellon. *See also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of self-represented complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

9

### D. Doe Defendants

Although not listed in the "Defendants" section of the complaint, Anderson also names "all medical staff assigned to 7 house seg." as a defendant in the caption of the complaint. *See* Doc. 1 at pp. 1–3. In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). However, it is possible to name Doe defendants where the defendant's name can be ascertained after reasonable discovery. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (finding that an action may only proceed against unknown individuals if the complaint makes sufficient allegations to ascertain their identities after reasonable discovery) (citing *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985)).

Here, Anderson fails to make specific allegations against any unknown defendant. As discussed above, a deliberately indifferent medical- or dental-care claim requires a pleading that the defendant actually knew of plaintiff's serious medical need and then deliberately disregarded it. Anderson merely lists fictitious individuals as defendants without alleging that they committed any wrongdoing which violated his rights. As a result, the pleadings fail to state a claim upon which relief may be granted as to "all medical staff assigned to 7 house seg." *See Krych*, 83 F. App'x at 855 (8th Cir. 2003) (affirming dismissal of self-represented complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

### E. General Failure of Allegations to State a Claim of Deliberate Indifference

Even if Anderson had named a specific, identifiable defendant who he alleged had violated his constitutional rights, the facts of the complaint fail to state a claim of deliberately indifferent medical care. Anderson asserts injuries of a re-broken jaw, an attached plate, loss of teeth, and lasting nerve damage. The jaw re-break, plate, and teeth removal occurred as part of

10

his jaw-fracture-repair surgery. No evidence shows these injuries related to either Anderson's wait for surgery or the amount or type of pain medication he received while waiting. Anderson was approved to see an oral surgeon on his first visit to medical (June 23); he saw the surgeon less than two weeks later (July 6); and the oral surgery occurred about a week later (July 14). No evidence shows, nor does Anderson allege, that an earlier surgery would have prevented either the surgical repairs (jaw re-break, plate attachment, and teeth removal)[3] or the lasting nerve damage. All these injuries relate to a surgical jaw-fracture repair, and Anderson does not allege that the Defendants are responsible for the assault that caused the initial jaw injury.

Further, based on Anderson's grievance filings, Anderson seemingly complains that he suffered during the "19 days" between the June 18th assault and his receipt of prescription pain medication on July 6—what he calls the "weeks of pain and suffering due to lack of care and treatment." Doc. 1 at p. 4. Based on a review of the pleadings, this nineteen-day period approximately breaks down to two days of unreported pain (June 18 to June 20 when Anderson first submitted a HSR); three days for medical to triage the complaint and schedule an appointment (June 20 to June 23); and fourteen days of treatment with Ibuprofen 400mg every six hours as needed for pain (June 23 to July 6).

As for the first two days, there can be no deliberate indifference because Anderson does not allege that any possible defendant was aware of his medical need during that time. *See Roberts v. Kopel*, 917 F.3d at 1042 (plaintiff must demonstrate that he suffered from an objectively serious medical need that defendants *actually knew of* and disregarded). Once Anderson submitted his HSR, medical staff became aware of his pain. Medical records indicate that it took three days to triage his complaint and get Anderson in to see a nurse. Starting June

---

[3] In fact, in the complaint, Anderson seems to admit that the teeth removal resulted directly from the jaw-break assault; he said, "3 lost teeth (more due to break)." Doc. 1 at p. 3.

11

...

23, Anderson was treated with over-the-counter pain medications. Then on July 6, he saw the surgeon and received additional pain medications. This fourteen-day period of nonprescription pain treatment does not constitute deliberate indifference. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (finding that a prisoner's disagreement with medical staff's decision to offer him over-the-counter medications, rather than prescription medication, does not constitute deliberate indifference). As such, the only time at issue for a potential deliberate indifference claim is the three-day triage period.

Nothing about this three-day period suggests intentional maltreatment or criminal recklessness. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Based on Eighth Circuit case law, Anderson would need to allege a longer period of delayed or denied medical care for there to be a dispute over Defendants' alleged deliberate indifference. *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (concluding that a "three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983"); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (concluding that a one-month delay treating infection that required extraction could constitute deliberate indifference).

A delay as relatively brief and as non-detrimental as Anderson alleges does not state a claim for deliberate indifference to his serious medical needs. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (finding that a prisoner's claim for delay of one month between complaint of leg pain and visit with doctor was insufficient to state a constitutional claim absent allegations the condition

required immediate attention or the delay in treatment aggravated the condition). Anderson fails to state a prima facie case of deliberate indifference.

In sum, Anderson brings this section 1983 case under the Eighth Amendment for deliberately indifferent medical and dental care. However, Anderson does not assert that any specific defendant knew he had a serious medical need and deliberately denied him care. As to the individual defendants that Plaintiff does name—Dr. Bellon and the medical staff in 7 House—Anderson fails to allege that they caused any constitutional harm. Similarly, although Anderson names Corizon as a defendant, he alleges no policy, custom, or other official action by Corizon that violated his rights. Anderson attempts to argue that Corizon failed to train its employees on how to care for a prison population during a pandemic. However, three days to triage a health service request and get a patient in to see a medical provider is not an abnormal wait time, whether in or out of prison. Anderson provides no other allegations of delayed care that together could demonstrate a pattern of violations resulting from a failure to train. For these reasons, the Court finds that Anderson's pleadings fail to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

### V.  Conclusion

For the reasons stated above, the Court grants Anderson's [2] Motion for Leave to Proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(1). The Court orders that Anderson shall pay an initial filing fee of $38.43 within thirty (30) days of the date of this Order. Anderson must make his remittance payable to "Clerk, United States District Court," and must include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

The Court further orders that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted.

The Court dismisses without prejudice Anderson's claims against all named defendants.  *See* 28 U.S.C. § 1915(e)(2)(B).  The Court denies as moot Anderson's [4] Motion for Appointment of Counsel.  An Order of Dismissal accompanies this Memorandum and Order.  The Court certifies that an appeal from this dismissal would not be taken in good faith.

So Ordered this 18th day of September 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE